**FILED**

FEB **1 5** 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHWIN KHOBRAGADE, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>COVIDIEN LP, a Delaware limited partnership,<br><br>        Defendant. | Case No.: 16cv468<br><br>**ORDER** |

HAYES, Judge:

 The matters before the Court are the Motion for Summary Judgment filed by Defendant Covidien LP (ECF No. 45), the Motion for Leave to Amend the Complaint filed by Plaintiff Ashwin Khobragade (ECF No. 108), the Motion for Sanctions filed by Plaintiff (ECF No. 122), and the Motion to Declare Plaintiff a Vexatious Litigant filed by Defendant (ECF No. 124).

## I. PLAINTIFF'S COMPLAINT

 On February 19, 2016, Plaintiff initiated this action by filing a Complaint. (ECF No. 1). Plaintiff brings claims against Defendant Covidien LP for breach of contract; violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c)–(d) based on extortion under § 1961(1), fraud in foreign labor contracting under 18 U.S.C.

§ 1351(a), and fraud and misuse of immigration documents under 18 U.S.C. § 1546; promissory estoppel; violation of the California Whistleblower Protection Act (CWPA), Cal. Lab. Code § 1102.5; intentional infliction of emotional distress (IIED); negligent infliction of emotional distress (NIED); and fraud. Plaintiff proceeds pro se.

Plaintiff alleges that in June 2011, he "was asked to relocate to San Diego" and "told by his manager that he would definitely receive a raise." (ECF No. 1 ¶¶ 11, 13). Plaintiff alleges that in August 2011, he followed instructions to travel to San Diego to find housing, during which a manager pointed out Covidien offices and told Plaintiff he would receive a raise for the cost of housing. (ECF No. 1 ¶¶ 14–18). The Complaint alleges that Plaintiff relocated in September 2011, and "never worked in San Diego, CA" because he was "temporarily" assigned to "Covidien's facilities in Tijuana, Mexico" shortly after relocating. *Id.* ¶¶ 20–21, 26. Plaintiff alleges he repeatedly requested the raise and office space he had been promised. *Id.* ¶¶ 25, 35. Plaintiff alleges he crossed the border to Tijuana on foot every day, a "lengthy" process causing Plaintiff to feel unsafe and to experience "stress and mental anguish." *Id.* at 4–5.

Plaintiff alleges that Covidien applied for an extension of his H1-B visa in April 2012, and that the documents indicated Plaintiff was employed in Massachusetts where the prevailing wage was significantly less than the San Diego prevailing wage. *Id.* ¶¶ 29–33. Plaintiff alleges that in April 2012, his visa was extended to August 2015. *Id.* ¶ 34. Plaintiff alleges that he was told, "[d]uring a conference call with a company attorney," that his "employment was at will and could be terminated at any time" and that he "would not be receiving a pay increase." *Id.* ¶ 36. Plaintiff alleges "[i]n July 2012, Covidien amended Plaintiff's status with USCIS" to indicate Plaintiff was working in San Diego, but that Plaintiff was "still working in Mexico." *Id.* ¶ 37. Plaintiff alleges that "[i]n September 2012, Plaintiff was fined for insubordination," was "placed under a performance improvement plan that would require him to meet impossible goals," and was "given several 'not able to meet the mark' letters." *Id.* ¶¶ 38–40. Plaintiff alleges that he was "repeatedly harassed with questions and comments trying to induce him to move to

Mexico" and that Plaintiff "was directly threatened and intimidated with deportation if he continued to ask for a pay raise and promotion." *Id.* ¶¶ 41–42. Plaintiff alleges that he moved to New Jersey in summer of 2013, and that he was "apprised of Defendant's fraudulent misrepresentations to USCIS" in 2015 when he "finally gained access to his immigration information." *Id.*

Plaintiff alleges "lost income" and "severe mental, emotional, physical, and emotional distress, and other damages." *Id.* at 8–9, 10–14. Plaintiff seeks "an Order enjoining Defendant, its officers, agents, employees, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from and further violation of 18 U.S.C. §§ 1961 et seq."; compensatory damages; treble damages and attorneys' fees under 18 U.S.C. § 1964; "punitive and exemplary damages pursuant to Cal. Civil Code § 3294 or as otherwise provided by law"; "civil penalties of up to $10,000 for each violation" of CWPA; "costs of suit"; prejudgment and postjudgment interest; and "other and further relief as the Court deems just and proper." *Id.* at 14–15.

## II.    DEFENDANT'S EVIDENCE

On April 27, 2009, Defendant wrote to Plaintiff offering "the position of R&D engineer . . . in Massachusetts at our Chicopee location." (Ex. 4 to Khobragade Dep., ECF 45-4 at 102). The letter states,

> Your starting salary will be $2,884.62 bi-weekly, $75,000 annualized. . . . You will be eligible to participate in the Annual Incentive Plan in FY 2009, which . . . will provide you with a target bonus of 5% percent of your base salary for 100 percent achievement of specified company financial performance objectives and individual objectives . . . .
> We both recognize that your employment is at will and that either party at its discretion may terminate this employment arrangement at any time, with or without cause. We also recognized that this offer letter is not meant to be a contract of employment. Please indicate your understanding and acceptance of this offer by signing below and returning the original to me for our files by April 30, 2009.

*Id.* at 102–03. The letter shows Plaintiff's signature, dated May 1, 2009. *Id.* at 103. Plaintiff alleges that he began to work for Defendant in Massachusetts in June of 2009. (Compl. ¶ 10; ECF No. 1). On May 14, 2009, Defendant wrote to the U.S. Department of Homeland Security, "on behalf of Mr. Ashwin Khobragade . . . so that he may serve our company as a Senior Research Engineer at our Chicopee, Massachusetts facility." (Ex. 5 to Khobragade Dep., ECF No. 45-4 at 105). The letter states,

> His compensation in this capacity will be $75,000 annually, plus standard corporate benefits. . . . This letter has been prepared in support of Mr. Khobragade's nonimmigrant petition only, and it is not intended nor should it be construed as a contract for employment.

*Id.* On August 12, 2009, the Department of Homeland Security issued an approval notice of a valid H1B visa for Plaintiff. (Ex. 6 to Khobragade Dep., ECF No. 45-4 at 114).

On March 10, 2011, Anabel Paulino of EY Mexico sent Plaintiff an email stating, "We have recently received a request to assist you with your Mexican immigration needs. I am the Global Immigration Coordinator for Covidien that will be overseeing your immigration process." (Ex. 7 to Khobragade Dep., ECF No. 45-4 at 117). On March 16, 2011, Plaintiff responded:

> Please find attached my job description and Scanned University Degree along with this email. I plan on commuting to Covidien Plant located to Tijuana, Mexico for work daily (7am to 5pm) and return back to my residence in San Diego after work.

*Id.*[1]

In July or August of 2011, Plaintiff traveled to San Diego, California, and Tijuana, Mexico for "show and tell . . . the driver . . . circle[d] around, showed us the -- that there is a Covidient plant." (Khobragade Dep. 140:14, 21–23, 143:9–14).

Defendant "initially listed the incorrect address for 'place of employment' on Plaintiff's Labor Condition Application." Def.'s Separate Statement of Undisputed Facts

---

[1] This Order reflects original spelling and grammar unless otherwise noted.

4

¶ 20, ECF No. 45-2; *see also* Khobragade Dep. 164:8–25 ("Q: [T]his is an amended petition. . . . [T]hat's the correct place of employment, right, Chicopee? A: At this time, July 18, 2012, I was working in Mexico, not in Chicopee, Massachusetts. . . . And I never had any projects in Chicopee, Massachusetts, while I was working in Tijuana."). *But see* Def.'s Separate Statement of Undisputed Facts ¶ 21, ECF No. 45-2 ("Covidien amended its LCA petition to reflect the correct place of employment.").

On September 26, 2012, Plaintiff met with his manager regarding a performance improvement plan. (Khobragade Dep. 181:1–11, ECF No. 45-4). The progress report corresponding to this meeting states,

> So far in FY 12 you have only completed two projects . . . . You have not added any new projects to supplement for the losses due to project delays. We have discussed about this during the mid year evaluation, monthly one on one meetings and so far no progress has been made to fill the gaps. I have mentioned that projects like pouch material consolidation would help fill the gaps, but there has been lack of effort from you to pull projects ahead. I have brought up my concerns rega[rd]ing lack of communication and commitment from you during our one on one meetings and so far there has been no response from you. . . .
>
> You have missed all your project deadlines and commitments. The two projects that were completed . . . were delayed and you haven't managed your teams effectively to establish any contingency plans. There were multiple revisions made to the originally established timelines on these projects and those commitments have been missed too. You have not demonstrated adequate knowledge of status of the projects, expected savings, key milestones when discussed during our update meetings. . . .
>
> On multiple occasions you have not worked collaboratively with the support groups to overcome roadblocks. The plant and other team members have to ask for an update on the projects all the time. You have not proactively provided any update. The Yaunkeaur regrind project was delayed and you have not responded to the requests from the team members and provided them necessary updates. The sure grip project that is currently in progress has also not received any updates and the committed deadline has been missed.

(Ex. 13 to Khobragade Dep., ECF No. 45-4 at 121–23). A progress report corresponding to a meeting date of October 10, 2012 is substantially similar. (Ex. 14 to Khobragade Dep., ECF No. 45-4 at 125–27). Between October 25, 2012 and November 19, 2012, Plaintiff

5

exchanged emails with his supervisor and Defendant's HR Programs Representative. (Ex. 16 to Khobragade Dep., ECF No. 45-4 at 129–33). In the emails, Plaintiff states that he is "not feeling well" and "terribly sick." *Id.* Plaintiff's supervisor and the HR Programs Representative request that Plaintiff provide a doctor's note upon his return and initiate a short term disability claim. *Id.* On November 15, 2012, the HR Programs Representative wrote:

> I want to let you know that because you are on an unapproved leave of absence, we will begin to withhold your pay starting on Monday, 11/19/12. Please let me know your expected return to work date today. . . .
> After you are out for five or more days, you need to call Aetna . . . and initiate a short-term disability claim. Since you have been out for three weeks now you should have already called Aetna and began the process of getting your leave approved.

*Id.* at 129. Plaintiff's employment with Defendant was terminated on February 19, 2013. Ex. 36 to Khobragade Dep., ECF No. 45-4 at 135; *see also* ECF 1 ¶ 43. The termination letter states,

> This action is being taken as a result of unapproved, unsubstantiated absences from work and your ongoing disregard of directions of management.
> Despite numerous requests to obtain verification of absences you have failed to provide substantiation of your need to be out of the office for:
> December 10, 2012 through December 18, 2012
> December 27, 2012 through January 6, 2013
> February 7, 2013 through February 12, 2013
> As stated in the letter to you dated January 18, 2013, even if you returned to work, we would still need to substantiate all previous leave periods, as you had not done so. Also, it was made clear that you would not be entitled to any further time off. As the above information shows, you have not been able to substantiate all of your time off, and you incurred further unexcused absence following your return to work.
> In addition your lack of cooperation in the efforts to obtain information related to your absences and in the request of work activities does not meet the level of acceptable behavior that is expected of our employees.
> Your termination is effective immediately.

(Ex. 36 to Khobragade Dep., ECF No. 45-4 at 135).

On February 9, 2018, Plaintiff was deposed. Plaintiff stated that when he was working in Mexico, he asked his manager "at least 20 times," "if I am going to get a salary increase." (Khobragade Dep. 91:6–8, 16). Plaintiff stated that before he was terminated, "discussions would come up" with his managers regarding his objections to working in Mexico. (Khobragade Dep. 127:1–3). Plaintiff stated confirmed that his objections to working in Mexico were his salary, "the distance between where [he] w[as] living and the border, the risk that somebody would put something in [his] car and jeopardize [his] visa status, the fact that a Mexican employee [was] hired to work and he was not helpful to [Plaintiff], and then the rumors and press that [Plaintiff] had heard about dangerous conditions in Mexico." (Khobragade Dep. 128:13–19).

Plaintiff was asked, "Have you ever reported to somebody outside of Covidien that you believe Covidien broke the law?" (Khobragade Dep. 320:7–8). Plaintiff responded "I had complained to EEOC, uh, WHD, OSC, USCIS, EEOC, Department of Labor." *Id.* at 320:11–12. Plaintiff responded to additional questions as follows:

> Q: Any other reports that you made outside of Covidien that you believe Covidien broke the law?
> A: Uh, all the agencies I have reported them to. The one I can find, because I was told I need to get authority to sue or the right to sue letter from these agencies before I can file a lawsuit.
> Q: And all these reports that you --
> A: Oh, DFEH and FM -- Fair Employment and Housing Commission.
> Q: And all of these reports that you have just been recounting, those were all post-termination; right?
> A: Correct.
> Q: And did you make any reports to anyone outside of Covidien that you believed Covidien had broken the law during your employment?
> A: No.
> Q: So during the course of your employment, you never reported that you thought Covidien had broken the law?
> A: Correct. I was not aware if there is such a thing where I can complain to agencies, and they would evaluate. I thought that lawyers are my only option if something is wrong with my employment.
> Q: Did you report to anyone inside or outside of Covidien, during your employment, that you thought Covidien had broken the law?

A: During the time of employment, no.

*Id.* at 320:21–25 to 321:1–23.

## III. PROCEDURAL BACKGROUND

On May 18, 2018, Defendant filed a motion for summary judgment which was originally set for hearing on June 18, 2018. (ECF No. 45). The initial deadline for Plaintiff to file a response in opposition was June 4, 2018. On June 4, 2018, the Court issued an Order allowing Plaintiff's attorney to withdraw as counsel and allowing Plaintiff to proceed pro se. The Court further granted Plaintiff a twenty-eight-day extension of time to oppose Defendant's motion for summary judgment. (ECF No. 53).

On June 29, 2018, the Court granted (ECF No. 56) Plaintiff's second Motion to Enlarge Time (ECF No. 55) to oppose summary judgment, until July 31, 2018.

On July 31, 2018, the Court granted (ECF No. 72) Plaintiff's third request (ECF No. 64) to continue time to oppose summary judgment, until September 17, 2018.

On August 24, 2018, Defendant filed a Motion to Continue pretrial and summary judgment briefing dates, which Plaintiff opposed on the grounds that "it would be counterproductive for [Plaintiff] to prohibit any longer than the time available." (ECF Nos. 75–76).

On August 28, 2018, the Court granted the Motion to Continue, stating the opposition to summary judgment was due October 8, 2018. (ECF No. 77).

On September 21, 2018, Plaintiff filed a Motion to Reopen Discovery. (ECF No. 21). Discovery had closed on April 30, 2018 pursuant to the Court's January 31, 2018 Order. (ECF No. 24).

On October 4, 2018, the Magistrate Judge denied the Motion to Reopen Discovery, stating that "Plaintiff has not demonstrated due diligence . . . in conducting discovery before the summary judgment motion was made and in pursuing his motion to reopen discovery thereafter"; that "prejudice exists to the Defendant who [h]as complied with the

8

1  deadlines"; and that there was "no good cause for plaintiff's motion to reopen discovery."
2  (ECF No. 93).

3  On October 9, 2018, Plaintiff filed a Motion to Reconsider reopening discovery.
4  (ECF No. 94). On October 11, 2018, Defendant filed a Reply (ECF No. 95) in support of
5  the Motion for Summary Judgment. On October 12, 2018, the Magistrate Judge denied
6  the Motion to Reconsider, stating that Plaintiff "cannot rely on his pro se status as an excuse
7  for his failure to propound his own discovery in this case . . . . [Plaintiff] fails to demonstrate
8  any error[,] mistake[,] . . . new law or facts justifying reconsideration." (ECF No. 98).

9  On October 17, 2018, Plaintiff filed a second Motion to reconsider reopening
10  discovery. (ECF No. 100). On October 18, 2018, the Magistrate Judge denied the second
11  Motion to reconsider, stating, "Plaintiff presents no new evidence that would warrant
12  reconsideration." (ECF No. 103).

13  On October 30, 2018, Plaintiff filed a Motion to Amend the Complaint. (ECF No.
14  108). On November 5, 2018, Plaintiff filed a fourth Motion to Extend Time to oppose
15  summary judgment. (ECF No. 113). On November 20, 2018, the Court granted the fourth
16  Motion to Extend Time to oppose summary judgment, until December 20, 2018. (ECF
17  No. 118).

18  On November 9, 2018, Defendant filed a Response (ECF No. 116) in opposition to
19  Plaintiff's Motion to Amend the Complaint. On November 26, 2018, Plaintiff filed a Reply
20  (ECF No. 119) in support of his Motion to Amend the Complaint.

21  On December 14, 2018, Plaintiff filed a fifth Motion to Extend Time to oppose
22  summary judgment. (ECF No. 120). On December 18, 2018, the Court granted the fifth
23  Motion to Extend Time to oppose summary judgment, until January 17, 2019. (ECF No.
24  121). The Court stated that further extensions would not be considered "absent a
25  substantive showing of good cause and excusable neglect." *Id.* at 4.

26  On December 26, 2018, Plaintiff filed an Ex Parte Motion for Sanctions, stating, "I
27  suffered one temporary injury to my top of the eye and lower lip without any stitches in
28  NJ. . . . My left shoulder had been injured in New York City, New York, while unconscious.

... Someone while on the train came and hit the left temple of my head my shoulder very badly causing huge pain and discomfort 8/8/2018 while on train. . . . [O]n 12/13/2018 a between 3:30am and 6:30am on train #725 on gold line towards union station, such as getting hurt in right shoulder in the month of November 2018." (ECF No. 122 at 8, 11–13).

On January 8, 2019, Defendant filed a Response (ECF No. 123) in opposition to Plaintiff's Motion for Sanctions.

On January 11, 2019, Plaintiff filed a sixth Motion to Extend Time to oppose summary judgment. (ECF No. 126).

On January 14, 2019, Defendant filed a Motion to Declare Plaintiff a Vexatious Litigant. (ECF No. 124).

On January 15, 2019, the Court denied the sixth Motion to Extend Time to oppose summary judgment, stating that "Plaintiff shall file any response in opposition to the Motion for Summary Judgment (ECF No. 45) on or before January 30, 2019." (ECF No. 127).

On January 18, 2019, Plaintiff filed a Response (ECF No. 128) in opposition to Defendant's Motion to Declare Plaintiff a Vexatious Litigant, and a Reply (ECF No. 129) in support of Plaintiff's Motion for Sanctions.

On January 24, 2019, Plaintiff filed a seventh Motion to Extend Time to oppose summary judgment. (ECF No. 131).

On January 25, 2019, Defendant filed a Reply (ECF No. 133) in support of the Motion to Declare Plaintiff a Vexatious Litigant.

On January 28, 2018, the Court denied the seventh Motion to Extend Time to oppose summary judgment, "find[ing] that Plaintiff has failed to demonstrate "excusable neglect," and stating, "The discovery matters Plaintiff raises have been addressed. There is no evidence that Plaintiff has been denied any discovery to which he was entitled. Plaintiff has had over seven additional months to prepare his opposition. The Court finds that further delay would result in prejudice to the Defendant and to the efficient administration

1  of justice. . . . Plaintiff shall file any response in opposition to the Motion for Summary
2  Judgment (ECF No. 45) on or before January 30, 2019." (ECF No. 135). The record
3  reflects that no response in opposition to the Motion for Summary Judgment has been filed.

4  **IV. MOTION FOR SUMMARY JUDGMENT**

5  **A. Legal Standard**

6  "A party may move for summary judgment, identifying each claim or defense—or
7  the part of each claim or defense—on which summary judgment is sought. The court shall
8  grant summary judgment if the movant shows that there is no genuine dispute as to any
9  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
10  56(a). *Id.* A material fact is relevant to an element of a claim or defense and whose
11  existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v.*
12  *Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The materiality of a fact is determined
13  by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby,*
14  *Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

15  The party moving for summary judgment "bears the burden of establishing the basis
16  for its motion and identifying evidence that demonstrates the absence of a genuine issue of
17  material fact." *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017) (citing *Celotex*,
18  477 U.S. at 323); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). The
19  movant "has no burden to negate or disprove matters on which the non-moving party will
20  have the burden of proof at trial," and may instead "point out . . . an absence of evidence
21  to support the non-moving party's case." *Sluimer v. Verity, Inc.*, 606 F.3d 584, 586 (9th
22  Cir. 2010) (citing *Celotex*, 477 U.S. at 325). "[A]fter . . . the moving party[] satisfie[s] its
23  initial burden by presenting evidence that demonstrated the absence of any genuine issue
24  of material fact," the burden shifts to the nonmovant "to set forth evidence raising a
25  disputed issue of material fact." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035
26  (9th Cir. 2007); *see Anderson*, 477 U.S. at 256.

27  The nonmovant "defeat[s] summary judgment" by putting forth "evidence such that
28  a reasonable juror drawing all inferences in favor of the [nonmovant] could return a verdict

in the [nonmovant's] favor." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quotation omitted); *see Anderson*, 477 U.S. at 255. "[A] plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011); *see Anderson*, 477 U.S. at 256. Courts "generally may not disregard direct evidence on the basis that it is implausible or incredible." *Burchett v. Bromps*, 466 F. App'x 605, 606 (9th Cir. 2012) (first citing *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987); then citing *McLaughlin v. Liu*, 849 F.2d 1205, 1207–08 (9th Cir. 1988)).

Motions for summary judgment cannot be granted "by default," "even if there is a complete failure to respond to the motion." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (2013) (quotation omitted). Rather, an "opposing party's failure to respond to a fact asserted" in a motion for summary judgment "permits a court to consider the fact undisputed." *Id.* (quoting Fed. R. Civ. P. 56(e)(2)) (internal quotation marks omitted). District courts must "assess whether 'the motion and supporting materials' entitle the movant to summary judgment." *Id.* (quoting Fed. R. Civ. P. 56(e)(3)). "A district court does not have a duty to search for evidence that would create a factual dispute. . . . A district court lacks the power to act as a party's lawyer, even for pro se litigants." *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007) (rejecting the argument "that as a pro se litigant the district court should have searched the entire record to discover whether there was any evidence that supports her claims").

### B. Discussion

#### 1. Breach of Contract and Promissory Estoppel

Defendant contends that Plaintiff's breach of contract claim fails because it is time barred. (ECF No. 45 at 2). Defendant further contends that the breach of contract claim fails because Plaintiff cannot show the existence of a contract, and Plaintiff was an at-will employee who ratified his employment conditions. Defendant contends that Plaintiff's promissory estoppel claim fails because it is time barred. Defendant further contends that the breach of contract claim fails because Plaintiff cannot establish a clear and

unambiguous promise, and Plaintiff cannot show that he reasonably and foreseeably relied on any such promise.

"Under basic contract law '[a]n offer must be sufficiently definite, or must call for such definite terms in the acceptance that the performance promised is reasonably certain.' . . . To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Ladas v. Cal. State Auto. Ass'n*, 23 Cal. Rptr. 2d 810, 814 (Ct. App. 1993). "[P]romises to pay salary increases or bonuses which are 'appropriate' to [the] responsibilities and performance" of the employee "are simply too vague and indefinite to be enforceable," and "are not capable of enforcement in a court of law." *Rochlis v. Walt Disney Co.*, 23 Cal. Rptr. 2d 793, 799, *as modified* (Ct. App. Oct. 6, 1993), *disapproved of on other grounds by Turner v. Anheuser-Busch, Inc.*, 876 P.2d 1022, 1029 (1994) (disapproving a line of cases allowing constructive discharge claims to be based on "mere constructive knowledge of the intolerable conditions leading to the employee's resignation"). In the employment context, "an at-will employment may be terminated at any time, an at-will employee may be demoted at any time," and "[t]he at-will presumption . . . necessarily authorizes an employer to unilaterally alter the terms of employment, provided that the alteration does not violate a statute or breach an implied or express contractual agreement." *Singh v. Southland Stone, U.S.A., Inc.*, 112 Cal. Rptr. 3d 455, 471 (Ct. App. 2010). "An employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions." *Id.* at 471–72 (quotation omitted).

"Promissory estoppel is an equitable claim that substitutes reliance on a promise as a substitute for bargained-for consideration. . . . Promissory estoppel does not apply if the promisee gave actual consideration and, therefore, a cause of action for promissory estoppel is inconsistent with a cause of action for breach of contract based on the same facts." *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 212 Cal. Rptr. 3d 216, 230 (Ct. App. 2016), *aff'd*, 413 P.3d 650 (Cal. 2018). "The elements of

promissory estoppel are (1) a promise, (2) the promisor should reasonably expect the promise to induce action or forbearance on the part of the promisee or a third person, (3) the promise induces action or forbearance by the promisee or a third person, and (4) injustice can be avoided only by enforcement of the promise." *Id.*

"[W]here the primary purpose of an equitable cause of action is to recover money under a contract, the statute of limitations applicable to contract actions governs the equitable claim. . . . [T]he two-year period of section 339, subdivision 1 (action on an obligation not in writing) is applicable." *Id.* at 229 n.5 (citing Cal. Civ. Proc. Code § 339). "While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." *Romano v. Rockwell Int'l, Inc.*, 926 P.2d 1114, 1118 (Cal. 1996) (quotation omitted).

The evidence in the record shows that Plaintiff was terminated on February 19, 2013. The record shows that Plaintiff was aware of his salary level and knew of the commute to Tijuana before he was terminated. The record shows that the Complaint was filed on February 19, 2016. The Court finds that Plaintiff's breach of contract and promissory estoppel claims are barred by the statute of limitations. The evidence in the record further shows that Plaintiff knew he would be working in Tijuana before moving to San Diego. The record contains evidence that Plaintiff was an at-will employee. The record contains evidence that Plaintiff accepted the terms of employment with Defendant despite his complaints. *See Singh*, 112 Cal. Rptr. 3d at 471 ("An employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions."). The record contains no evidence to the contrary. The record contains no evidence that Defendant made a specific promise regarding Plaintiff's compensation. The Court concludes that the evidence is inadequate to support Plaintiff's breach of contract and promissory estoppel claims. Defendant has carried its burden pursuant to Rule 56 "by presenting evidence that

1 demonstrate[s] the absence of any genuine issue of material fact." *See Horphag*, 475 F.3d
2 1035. Plaintiff must "set forth evidence raising a disputed issue of material fact." *See id.*

3     Plaintiff did not file a response in opposition to the Motion for Summary Judgment.
4 The Court granted Plaintiff extensions of time, allowing him more than six additional
5 months to file a response.[2] The record does not contain "evidence such that a reasonable
6 juror drawing all inferences" in Plaintiff's favor "could return a verdict" in his favor. *See*
7 *Zetwick*, 850 F.3d at 441. The Court concludes that Defendant is entitled to summary
8 judgment in its favor as to Plaintiff's CWPA claim. *See Heinemann*, 731 F.3d at 917
9 ("'[T]he motion and supporting materials' entitle the movant to summary judgment.").

10     **2. RICO**

11     Defendant contends that Plaintiff's RICO claim fails because Plaintiff cannot show
12 that Defendant has associated with others to form an enterprise. Defendant further
13 contends that Plaintiff's RICO claim fails because emotional distress damages are not
14 compensable under RICO.

15     RICO "provides for both criminal and civil liability." *Odom v. Microsoft Corp.*, 486
16 F.3d 541, 545 (9th Cir. 2007) (citing Pub. L. No. 91-452, § 901, 84 Stat. 922 (1970)
17 (codified at 18 U.S.C. §§ 1961–1968)). "Subsections 1962(a) through (c) prohibit certain
18 'pattern[s] of racketeering activity' in relation to an 'enterprise.'" *United Bhd. of*
19 *Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837
20 (9th Cir. 2014). "The elements of a civil RICO claim are as follows: (1) conduct (2) of an
21 enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5)
22 causing injury to plaintiff's business or property." *Id.* at 837 (citation omitted)). "[T]o
23 establish liability under § 1962(c) one must allege and prove the existence of two distinct
24 entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred
25 to by a different name. . . . [L]iability depends on showing that the defendants conducted

26

27

28 [2] Plaintiff's Ex Parte Motion (ECF No. 137) to extend time to oppose summary judgment is denied for the reasons stated at ECF No. 127 and ECF No. 135.

1  or participated in the conduct of the enterprise's affairs, not just their own affairs." *Cedric*

2  *Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161–63, (2001) (quotation omitted).

3      "To have standing under § 1964(c), a civil RICO plaintiff must show . . . that his

4  alleged harm qualifies as injury to his business or property . . . ." *Canyon Cty. v. Sygenta*

5  *Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citations omitted). "[A]s a matter of law,

6  personal injury, including emotional distress, is not compensable under section 1964(c) of

7  RICO." *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990). A plaintiff "lacks

8  standing to sue under § 1962(c) [if] the injury he suffered was the result of his alleged

9  wrongful termination and was not caused by predicate RICO acts." *Reddy v. Litton Indus.,*

10  *Inc.*, 912 F.2d 291, 294 (9th Cir. 1990), *cited with approval in Beck v. Prupis*, 529 U.S.

11  494, 500, 507 (2000) ("[A] person may not bring suit under § 1964(c) . . . for injuries

12  caused by an overt act that is not an act of racketeering or otherwise unlawful under the

13  statute.").

14      Pursuant to 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate

15  any of the provisions of subsection (a), (b), or (c) of this section." "Plaintiffs cannot claim

16  that a conspiracy to violate RICO existed if they do not adequately plead a substantive

17  violation of RICO." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010)

18  (quotation omitted).

19      In this case, evidence in the record shows that Plaintiff was terminated from his

20  employment with Defendant. The record contains no evidence of an entity "distinct" from

21  Defendant. *See Cedric*, 533 U.S. at 161. The record contains no evidence that Defendant

22  "conducted or participated in the conduct of [an] enterprise's affairs, not just [its] own

23  affairs." *See id.* at 163. The record contains no evidence that Defendant engaged in

24  conduct causing physical injury to Plaintiff. *See Berg*, 915 F.2d at 464. The record

25  contains no evidence that Plaintiff's injuries were caused by a predicate RICO act as

26  opposed to Plaintiff's "alleged wrongful termination." *See Reddy*, 912 F.2d at 294.

27  Defendant has carried its burden pursuant to Rule 56 "by presenting evidence that

28

1  demonstrate[s] the absence of any genuine issue of material fact." *See Horphag*, 475 F.3d

2  1035.  Plaintiff must "set forth evidence raising a disputed issue of material fact." *See id.*

3        Plaintiff did not file a response in opposition to the Motion for Summary Judgment.

4  The record does not contain "evidence such that a reasonable juror drawing all inferences"

5  in Plaintiff's favor "could return a verdict" in his favor. *See Zetwick*, 850 F.3d at 441.  The

6  Court concludes that Defendant is entitled to summary judgment in its favor as to Plaintiff's

7  substantive RICO claim. *See Heinemann*, 731 F.3d at 917 ("'[T]he motion and supporting

8  materials' entitle the movant to summary judgment.").  The Court further concludes that

9  Defendant is entitled to summary judgment in its favor as to Plaintiff's claim of conspiracy

10  to violate RICO. *See Sanford*, 625 F.3d at 559 (dismissing RICO conspiracy claim for lack

11  of a substantive RICO claim).

12  ### 3. California Whistleblower Protection Act

13        Defendant contends that Plaintiff's California Whistleblower Protection Act

14  (CWPA) claim fails because Plaintiff cannot show he engaged in protected activity.

15  Defendant further contends that Plaintiff's CWPA claim fails because Plaintiff has no

16  evidence to dispute that Defendant lawfully terminated him.

17        "[U]nder section 1102.5(b), an employer may not retaliate against an employee for

18  disclosing information to a government or law enforcement agency that the employee

19  reasonably believes discloses a violation of, or noncompliance with, a state or federal

20  statute or regulation . . . [or] state or federal "rule." *Patten v. Grant Joint Union High Sch.*

21  *Dist.*, 37 Cal. Rptr. 3d 113, 116–17 (Ct. App. 2005) (citing Cal. Lab. Code § 1102.5). "[A]

22  section 1102.5(b) retaliation cause of action require[s] that . . . the plaintiff establish a

23  prima facie case of retaliation . . . . To do that, a plaintiff must show (1) she engaged in a

24  protected activity, (2) her employer subjected her to an adverse employment action, and

25  (3) there is a causal link between the two." *Id.* at 117.  If the plaintiff meets this burden,

26  then the defendant must "provide a legitimate, nonretaliatory explanation for its acts," at

27  which point the plaintiff must show "this explanation is merely a pretext for the retaliation."

28  *Id.* at 117.

The evidence in the record shows no reports made by Plaintiff regarding unlawful conduct by Defendant. The record contains evidence that Defendant terminated Plaintiff's employment based on unauthorized, unexplained absences and unsatisfactory performance. The record contains no evidence to the contrary. Defendant has carried its burden pursuant to Rule 56 "by presenting evidence that demonstrate[s] the absence of any genuine issue of material fact." *See Horphag*, 475 F.3d 1035. Plaintiff must "set forth evidence raising a disputed issue of material fact." *See id.*

Plaintiff did not file a response in opposition to the Motion for Summary Judgment. The Court concludes that Defendant is entitled to summary judgment in its favor as to Plaintiff's CWPA claim. *See Heinemann*, 731 F.3d at 917 ("'[T]he motion and supporting materials' entitle the movant to summary judgment.").

### 4. Intentional and Negligent Infliction of Emotional Distress

Defendant contends that Plaintiff's claims for intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED) fail because they are preempted by California Labor Code § 3601 and California's workers compensation system. Defendant further contends that Plaintiff's IIED claim fails because Plaintiff cannot prove that Defendant engaged in extreme and outrageous conduct, that Defendant intended or recklessly disregarded the possibility of causing emotional distress, or that Defendant actually and proximately caused Plaintiff severe or extreme emotional distress. Defendant further contends that Plaintiff's NIED claim fails because it is based on Defendant's inherently intentional supervisory employment conduct, which cannot support a cause of action for negligence.

To recover for on a claim for IIED, a plaintiff must prove: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009) (internal quotations and citations omitted). Conduct is "outrageous" if it is "so extreme as to exceed

all bounds of that usually tolerated in a civilized community." *Id.* at 975–76 (concluding the defendant's vulgar, threatening, and inappropriate comments "f[e]ll far short of conduct that is so outrageous that it exceeds all bounds of that usually tolerated in a civilized community.") (quotations omitted).

To recover on a claim for NIED, a plaintiff must prove "serious emotional distress" caused by "a breach of duty owed to the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.'" *Burgess v. Superior Court*, 831 P.2d 1197, 1201 (Cal. 1992) (quoting *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 770 P.2d 278, 282 (Cal. 1989)). California courts have allowed NIED claims against a doctor who misdiagnosed the plaintiff's wife with syphilis, *Molien v. Kaiser Found. Hosps.*, 616 P.2d 813, 821 (Cal. 1980); a hired therapist who sexually molested the plaintiff's sons, *Marlene*, 770 P.2d at 282–83; and a crematorium that mishandled the remains of the plaintiffs' close relative, *Christensen v. Superior Court*, 820 P.2d 181, 196–200 (Cal. 1991). "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 807–08 (Cal. 1993).

"[C]laims for intentional or negligent infliction of emotional distress are preempted by the exclusivity provisions of the workers' compensation law." *Livitsanos v. Superior Court*, 828 P.2d 1195, 1197 (Cal. 1992). When "[t]he alleged wrongful conduct . . . occur[s] at the worksite, in the normal course of the employer-employee relationship . . . workers' compensation is [the] exclusive remedy for any injury that may have resulted." *Miklosy v. Regents of Univ. of Cal.*, 188 P.3d 629, 645 (Cal. 2008), *superseded on other grounds by* Act of July 15, 2010, 2010 Cal. Legis. Serv. Ch. 104. "[W]hen the misconduct attributed to the employer is . . . a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the

exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." *Cole v. Fair Oaks Fire Prot. Dist.*, 729 P.2d 743, 750 (1987).

The evidence in the record shows that Defendant filed immigration papers on Plaintiff's behalf, and that Plaintiff believes the filings contained errors. The evidence in the record shows that Plaintiff expressed dissatisfaction with his compensation and working in Tijuana. The record shows that Plaintiff received criticism regarding his performance. The record shows that Defendant terminated Plaintiff's employment. The record contains no evidence that Defendant engaged in wrongful conduct outside the workplace or beyond "the normal course of the employer-employee relationship." *See Miklosy*, 188 P.3d at 645. The Court concludes that Plaintiff's IIED and NIED are preempted. The Court further concludes that Defendant's conduct in this matter "fall[s] far short of conduct that is so outrageous that it exceeds all bounds of that usually tolerated in a civilized community" as required to prove an IIED claim. *See Hughes*, 209 P.3d at 976. The Court further concludes that the evidence does not show that Defendant "assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object," or that "emotional distress ar[ose] out of the defendant's breach" or "[wa]s proximately caused by that breach of duty," as required to prove an NIED claim. *See Potter*, 863 P.2d 795. Defendant has carried its burden pursuant to Rule 56 "by presenting evidence that demonstrate[s] the absence of any genuine issue of material fact." *See Horphag*, 475 F.3d 1035. Plaintiff must "set forth evidence raising a disputed issue of material fact." *See id.*

Plaintiff did not file a response in opposition to the Motion for Summary Judgment. The Court concludes that Defendant is entitled to summary judgment in its favor as to Plaintiff's IIED and NIED claims. *See Heinemann*, 731 F.3d at 917 ("'[T]he motion and supporting materials' entitle the movant to summary judgment.").

### 5. Fraud

Defendant contends that Plaintiff's fraud claim fails because he cannot show Defendant intentionally misrepresented facts regarding his employment with the intent to

induce reliance. Defendant further contends that Plaintiff's fraud claim fails because he cannot show he detrimentally relied on or suffered damages from any such promise.

A fraud claim requires proof of "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 909 P.2d 981, 984 (1996). "A declaration of intention, although in the nature of a promise, made in good faith, without intention to deceive, and in the honest expectation that it will be fulfilled, even though it is not carried out, does not constitute a fraud." *Magpali v. Farmers Grp., Inc.*, 55 Cal. Rptr. 2d 225, 231, *as modified on denial of reh'g* (Ct. App. 1996) (quotation omitted). "[S]omething more than nonperformance is required to prove the defendant's intent not to perform his promise." *Id.* "[M]aking a promise with an honest but unreasonable intent to perform is wholly different from making one with no intent to perform." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. Rptr. 2d 861, 864 (1991).

The evidence in the record shows that Plaintiff knew he would be working in Tijuana. The record contains no evidence that Defendant knowingly misrepresented facts regarding Plaintiff's immigration paperwork. The record contains no evidence that Defendant made a specific promise to Plaintiff regarding his salary with the intent not to perform such a promise. The Court concludes that the evidence in the record does not support a fraud claim. Defendant has carried its burden pursuant to Rule 56 "by presenting evidence that demonstrate[s] the absence of any genuine issue of material fact." *See Horphag*, 475 F.3d 1035. Plaintiff must "set forth evidence raising a disputed issue of material fact." *See id.*

Plaintiff did not file a response in opposition to the Motion for Summary Judgment. The Court concludes that Defendant is entitled to summary judgment in its favor as to Plaintiff's IIED and NIED claims. *See Heinemann*, 731 F.3d at 917 ("'[T]he motion and supporting materials' entitle the movant to summary judgment.").

### 6. Conclusion

The Court finds no genuine issues of material fact exist as to Plaintiff's claims for breach of contract, 18 U.S.C. §§ 1962(c)–(d), promissory estoppel, Cal. Lab. Code § 1102.5, intentional infliction of emotional distress, negligent infliction of emotional distress, or fraud, and that Defendant is entitled to judgment as a matter of law on all claims.

## V.    MOTION TO AMEND

Plaintiff seeks to amend his complaint to add twenty-nine new causes of action. Plaintiff proposes additional claims related to employment: wrongful termination; workplace discrimination based on race, national origin, religion, gender, and disability; "Unmerited wage practice"; "Employees Rights Violation"; "Employer mis-classifies employees . . . not complying with Fair Labor Standard Act"; "Wage Claim (including Wage payment and collection Act)"; "Employer didn't not give me proper tools to perform my job properly : And not even the rights to perform my job"; and "Severance Pay claim." Plaintiff proposes various additional claims: "False Claims Act"; "Failure to correct harassments"; "Barrier on bringing the lawsuit"; "ABIGEAT Claim"; "Abuse of Power" and "Abuse of Process" claims; "Wrong displacement to further place"; "Financial Inducement"; "Bait and Switch Trap Offense"; "Fraudulent Conciliation offense"; "Physical Injury/retaliation"; "Anti-Slavery Act"; "Intentional libel, Sabotage Slander and defamation"; "Breach of Fiduciary Duty"; "Breach of Warranty"; "Duty of Loyalty offense claim"; and "Professional Negligence." (ECF No. 108-2 at 2–3). Plaintiff proposes the following allegations:

> Plaintiff was transferred . . . to . . . Mexico to be terminated or make conditions that becomes unbearable for me to work that Plaintiff have to quit . . . . When Instead they could have transferred me to other location . . . . Plaintiff was the only other person of color/national origin/Race in the 1000+ employee company at Mexico, where Plaintiff do not speak the local language of Mexico, where Plaintiff was not even given an office to work for almost a year . . . no resources/technician were given to work for me i.e. with drawing my capabilities and capacity as compared to prior location . . . . [T]hey preferred one female employee over the other male employee . . . . Plaintiff suffered unfavorable or unfair treatment . . . . . The defendant lied to the

government . . . that I am working . . . in San Diego, Ca . . . when the defendant do not even have a work location in the entire county of San Diego . . . [t]he defendant intentionally lied to the government agency/department that Plaintiff is an Senior Research Engineer, when the defendant had intentionally hired me at a with a title of Research and Development Engineer . . . . Plaintiff was driven by the defendant, so and such that Plaintiff spend all my money all over the United States of America, prohibiting the plaintiff to settle in a house having the plaintiff live in a automobile, with the intention of stealing the money from the plaintiff . . . . The defendant abuse their power by . . . prohibition in many of the plaintiffs ventures inclusive of but not limiting to the Business education assignment, Law Education activity, Work/Job hunting and many of the plaintiffs Business venture responsibility. . . . The defendant . . . showed me a very higher salary and then retracted that salary at the time of signing the contract before trapping (at the time of hiring) but also did the same by showing a very high salary and then retracting that salary at the time of relocation before trapping (transfer to a new location). . . . The defendant . . . told me that my position . . . has salary up to $120,000. [T]his money was given to someone in the upper management or rather stole for me to give it to someone else or themselves . . . . The defendant hired me for working as a non exempt employee, however . . . started paying me for the hours . . . in Mexico as if Plaintiff was an hourly worker or an exempt worker, and deducting the salary/hours according to the per hour pay when Plaintiff was not in the defendant work location. Wage hour changed from 80 to 75 hours . . . without my consent, however the pay remained the same. . . . Being from car being caught and taken to repossession, numerous subway ticket . . . numerous highway traffics violations tickets, restaurants, defendant cafeteria food tampering . . . numerous trolley tickets, sleep deprivation, defendant trying to drive their agenda . . . defendant was using me as a homosexual person even when the defendant knows Plaintiff is a heterosexual person, the defendant still thinks and is trying to use me as their employee . . . . The company used psychological torture techniques/tactics to harass me . . . . [T]he defendant had used my private apartment/apartment complex for their pleasure or to cause me shocked treatment. . . . The defendant intentionally had the plaintiff perform the ACL operation on him and was driven by the defendant to complete it. . . . Plaintiff was trapped in the forced labor industries, as a trafficked labor. . . . The defendant intentionally committed libel, slander and defamation acts to the plaintiff from the start as a means to promote someone else over the defendant, to restrict defendant's salary and promotion, etc. . . . Plaintiff was a shareholder of the defendant . . . . The defendant having known that my current situation should have given the

plaintiff a better severance pay than $1574.65, as they knew Plaintiff would not be able to make same kind of money after termination. . . .

*Id.* at 13–32. Plaintiff asserts that "Many pivotal events have transpired and revealed themselves from being hidden/forcefully hidden by the adverse party, since filing of Plaintiffs' original complaint." (ECF No. 108 at 2). Plaintiff contends that Defendant would not be prejudiced because Defendant has first-hand knowledge of the new facts alleged. Plaintiff further contends that Defendant would not be prejudiced because the proposed amended complaint adds no new defendants. Plaintiff asserts that "[t]he proposed amendments would intend to opening up discovery and the amended claims." *Id.* at 3. Plaintiff asserts that "it's the plaintiff who would be seriously tremendously unduly prejudiced if the discovery is not reopened, if amending the complaint does not happen." (ECF No. 119 at 5). Plaintiff contends the amendments would not be futile and relate back to the original complaint. Plaintiff contends that the new claims state a claim for relief and are not time barred.

Defendant contends that Plaintiff has not demonstrated good cause to amend under Rule 16(b) because Plaintiff offers no justification for filing the Motion over a year after the October 25, 2017 deadline to amend, and over two and a half years after the original Complaint was filed. Defendant asserts that Plaintiff fails to show his new claims are premised on facts not known at the time of the original Complaint. Defendant asserts, "Plaintiff's professed intent to use the amended complaint as a vehicle to reopen discovery only further weighs in favor of denying his Motion." (ECF No. 116 at 12). Defendant contends that Plaintiff's proposed amendments are futile, time-barred, do not relate back, and fail to state a claim. Defendant asserts that seeking to bring new claims at this late stage in the litigation is an exercise in futility that would cause Defendant undue prejudice.

A motion for leave to amend filed after the time period specified in a district court's scheduling order is governed by the "good cause" standard of Federal Rule of Civil Procedure 16(b). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Rule 16(b) provides that a district court must issue a scheduling order that limits

1   "the time to join other parties, amend the pleadings, complete discovery, and file motions."

2   Fed. R. Civ. P. 16(b).  Rule 16(b) also provides that "[a] schedule may be modified only

3   for good cause and with the judge's consent."  *Id.*  "Rule 16(b)'s 'good cause' standard

4   primarily considers the diligence of the party seeking amendment.  The district court may

5   modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the

6   party seeking the extension.'"  *Johnson*, 975 F.2d at 609 (citing Fed. R. Civ. P. 16 advisory

7   committee's notes (1983 amendment)).  If the court finds that a plaintiff has shown good

8   cause pursuant to Federal Rule of Civil Procedure 16(b), the court must then consider

9   whether leave to amend is proper under Federal Rule of Civil Procedure 15.  *Id.* at 608.

10  "Although the existence or degree of prejudice to the party opposing the modification might

11  supply additional reasons to deny a motion, the focus of the inquiry is upon the moving

12  party's reasons for seeking modification."  *Id.* at 609.

13          Federal Rule of Civil Procedure 15(a) provides that after the time for amendment

14  "as a matter of course" has passed, "a party may amend its pleading only with the opposing

15  party's written consent or the court's leave."  *Id.*  Federal Rule of Civil Procedure 15

16  mandates that leave to amend "be freely given when justice so requires."  Fed. R. Civ. P.

17  15(a).  In *Foman v. Davis*, the Supreme Court offered several factors for district courts to

18  consider in deciding whether to grant a motion to amend under Rule 15(a):

19          In the absence of any apparent or declared reason – such as undue delay, bad
20          faith or dilatory motive on the part of the movant, repeated failure to cure
            deficiencies by amendments previously allowed, undue prejudice to the
21          opposing party by virtue of allowance of the amendment, futility of
22          amendment, etc. – the leave sought should, as the rules require, be "freely
            given."
23

24  371 U.S. 178, 182 (1962); *see also Bowles v. Reade*, 198 F.3d 752, 757–58 (9th Cir. 1999)

25  ("Liberality in granting a plaintiff leave to amend is subject to the qualification that the

26  amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is

27  not futile. . . . Additionally, the district court may consider the factor of undue delay. . . .

28  Undue delay by itself, however, is insufficient to justify denying a motion to amend.")

(citation omitted). "Not all of the [Foman] factors merit equal weight. . . . [T]he consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citations omitted).

"[L]eave to amend should be granted if it appears *at all possible* that the plaintiff can correct the defect. . . . [T]he rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant." *Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013) (concluding it abused discretion to deny pro se prisoner plaintiff leave to amend his second amended complaint that misidentified nurses who allegedly refused plaintiff medical treatment in violation of the Eighth Amendment) (quotations omitted); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (reversing district court that "provided no explanation for dismissing with prejudice, despite the fact that the operative complaint was the first and only complaint filed by Sharkey, who was proceeding pro se").

"A district court, however, does not abuse its discretion in denying leave to amend where amendment would be futile." *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002) (citation omitted); *see also Mpoyo v. Litton Electro-Optical Sys.*, 92 F. App'x 551, 552 (9th Cir. 2004) (determining "the district court properly denied his motion to amend the complaint," where the pro se plaintiff did not make out a prima facie case of retaliation and did not rebut the defendant's evidence of nondiscriminatory reasons for discharge, "because [Defendant] would have been substantially prejudiced if [Plaintiff] was granted leave to amend his complaint, since discovery had already closed and both parties had already submitted motions for summary judgment").

"The timing of [a] motion" for leave to amend, when filed "after the parties ha[ve] conducted discovery and a pending summary judgment motion ha[s] been fully briefed, weighs heavily against allowing leave. A motion for leave to amend is not a vehicle to circumvent summary judgment." *Schlacter-Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991) (affirming district court denial of leave to amend upon "ma[king] a specific finding of prejudice to the opposing party" and "properly consider[ing] the delay in the desired amendment, the fact that there was a pending summary judgment motion, and the

futility of most of the proposed claims"), *abrogated on other grounds by Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001); *see also Roberts v. Ariz. Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981) ("Here the district court made a specific finding of prejudice to the opposing party, noting that the retaliatory discharge issue was raised at the eleventh hour, after discovery was virtually complete and the Board's motion for summary judgment was pending before the court."). In *M/V American Queen v. San Diego Marine Construction Corporation*, the Court of Appeals stated that the following "factors form[ed] the basis of a proper exercise of discretion by the trial court in refusing to allow amendment": "a delay in making the motion of one and one-half years after the case was filed," "[n]o facts, newly discovered in that period, were alleged," and "a motion for summary judgment was pending and possible disposition of the case would be unduly delayed by granting the motion for leave to amend." 708 F.2d 1483, 1492 (9th Cir. 1983); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("[T]he district judge was justified in exercising his discretion not to permit the amendment. The delay of nearly two years, while not alone enough to support denial, is nevertheless relevant. . . . In light of the radical shift in direction posed by these claims, their tenuous nature, and the inordinate delay, we conclude that the district court did not clearly abuse its discretion in denying leave to amend.").

In this case, Plaintiff filed the Motion to amend six months after discovery closed and over five months after Defendants filed the Motion for Summary Judgment. Plaintiff does not explain his delay. Plaintiff does not explain why the new allegations were not known to him at the time he filed his original Complaint. The Court finds the Motion to amend was filed with undue delay. *See M/V Am. Queen*, 708 F.2d at 1492 (denying leave to amend proper based on "a delay in making the motion of one and one-half years after the case was filed," "[n]o facts, newly discovered in that period, were alleged," and "a motion for summary judgment was pending and possible disposition of the case would be unduly delayed by granting the motion for leave to amend"). The Court finds that proposed claims regarding employment classification and wages, and regarding discrimination, pose

a "radical shift in direction." *See Morongo*, 893 F.2d at 1079. The Court finds that the proposed factual allegations are "tenuous" and inadequate to support prima facie cases with respect to the proposed causes of action. *See id.* The Court finds that the proposed "amendment[s] would be futile." *See Flowers*, 295 F.3d at 976. The Court finds that amending the Complaint at this late stage in the litigation would result in "prejudice to the opposing party." *See Roberts*, 661 F.2d at 798. The Court denies Plaintiff's Motion for Leave to Amend the Complaint. (ECF No. 108).

## VI.    MOTION TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT

Defendant requests that the Court declare Plaintiff a vexatious litigant and require Plaintiff to "obtain leave of court before filing any additional pleadings, motions or papers regarding the subject matter at issue in this case or with respect to Covidien, with the sole exception of his MSJ opposition." (ECF No. 124-1 at 3). Defendant states, "At some point, enough is enough, and Covidien should be relieved from the obligation of responding to Plaintiffs successive, lengthy, and largely unintelligible motions." *Id.* Defendant references the following motions:

- Motion for Protective Order (ECF No. 62) – denied. (*See* ECF No. 73) (Minute order denying Plaintiffs Motion because "Plaintiff fails to provide an adequate basis in law or fact for a protective order.").
- Motion for Order to Compel Discovery (ECF No. 79) – denied. (*See* ECF No. 85, 1:18) ("Plaintiffs discovery motions are untimely.").
- Motion for Issuance of Subpoenas (ECF No. 81) – denied. (*See* ECF No. 85, 1:18) ("Plaintiffs discovery motions are untimely.").
- Motion to Compel to Reopen Discovery (ECF No. 89) – denied. (*See* ECF No. 93, 3:9-10) (finding that Covidien has been prejudiced in that it complies with the deadlines and Plaintiff does not).
- Motion to Reconsider Reopening Discovery (ECF No. 94) – denied. (*See* ECF No. 98, 2:24-25) ("Plaintiff cannot rely on his pro se status as an excuse for his failure to propound his own discovery in this case.").
- Second Motion to Reconsider Reopening Discovery (ECF No. 100) – denied. (*See* ECF No. 103) ("Plaintiff presents no new evidence that would warrant reconsideration.").
- Ex Parte Motion to Compel Reconsideration by Plaintiff (ECF No. 105) – denied. (*See* ECF No. 104, nunc pro tune) (motion previously denied.)

- Ex Parte Motion for Leave to Amend Complaint (ECF No. 108) – *pending*.
- Motion for Sanctions (ECF No. 122) – *pending*.
- Five ex parte requests to continue the deadline for Plaintiff's response to Covidien's Motion for Summary Judgment ("MSJ") – all of which were granted. (ECF Nos. 48, 55, 64, 113, 120.) . . . .
- [A] request for sanctions totaling $855 million for alleged bodily and psychological injuries that have no rational connection to this case, Covidien, or its attorneys. ECF No. 122.

*Id.* at 2–3.

Defendant contends that all four factors as articulated in *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007) are met so as to permit the Court to declare Plaintiff a vexatious litigant. First, Defendant contends that Plaintiff has been given notice and an opportunity to be heard based on its properly noticed motion. Second, Defendant contends that it has provided the Court with an adequate record to find that Plaintiff is abusing the court system. Third, Defendant contends that Plaintiff's litigation conduct is harassing and frivolous because he has filed fourteen meritless and procedurally deficient motions, which have required Defendant to devote significant time, effort, and expense to oppose. Defendant contends that Plaintiff's filings are harassing and frivolous, and asserts that he has filed eight ex parte requests within five months, repeating arguments previously raised and rejected by the Court. (ECF No. 133 at 2). Finally, Defendant contends that a pre-filing order is necessary and narrowly tailored. (ECF No. 124-1 at 5). Defendant asserts that "Plaintiff has made it all too clear that, absent a pre-filing bar order, he will continue this frivolous and harassing conduct." (ECF No. 133 at 2). Defendant contends that it requests a narrowly drafted order to "simply require that Plaintiff seek leave of this Court prior to filing any additional pleadings, motions and/or papers other than his MSJ opposition," which would "relieve Covidien from the burden associated with reviewing and responding to Plaintiff's frivolous filings," and "save Plaintiff (and this Court) significant time and energy associated with Plaintiff's harassing litigation tactics." (ECF No. 124-1 at 5).

1  Plaintiff asserts that "The pro se plaintiff has not violated any or flagrantly abused
2  the judicial process." (ECF No. 128 at 9). Plaintiff asserts, "I have not started any other
3  claims in the court of law against this or any other potential defendant. . . . I have not
4  relitigated or file any attempts to relitigate, therefore there is no ground or baring me from
5  bringing any other lawsuit." *Id.* Plaintiff asserts that Defendant's Motion is a "dirty little
6  trick" and Defendant is "the one that has harassed, tortured, broken my face, broken my
7  head, broken my lip, broken my shoulder, broken my leg causing pain, agony,
8  embarrassment, distress, scars, trauma, emotional distress and harassment and then saying
9  that it's the plaintiff that is causing vexation and harassing, that sounds insane and crazy."
10  *Id.* at 3. Plaintiff lists sixty-two "flagrant and blatant acts of violation of law" including
11  Plaintiff being hit on the head and shoulder while asleep, being "fe[]d very bad thing in my
12  mouth while I was asleep unconsciously" and "force fe[]d to the max"; "constantly being
13  burned . . . when/if I use apple products"; "be[ing] told to do thing/ dictate (synonym like
14  a word of bullet by females by walkie talkie) even though I have no responsibility towards
15  them and it felt like I was been held captive and blocked from doing nothing else but follow
16  their orders in Los Angeles, CA, by a group of feminist group or feminist individual
17  female," and "a constant some unknown female and a male, not any relation to the plaintiff
18  and always in the background stalking and alternatively either saying the word 'yes' or
19  saying the word 'No'"; being "sprayed with disgusting smell in and around me" and
20  "sprayed on the center of my head so that my hairs are falling," "[s]omeone putting liquid/s
21  all over my shirt while I am asleep"; and possessions and data being stolen from him. *Id.*
22  at 3–7. Plaintiff requests that the Court "order the declaration that the defendant is an
23  extremely vexatious defendant and sanction them very hefty monetarily and non-
24  monetarily." *Id.* at 10.
25      "The All Writs Act, 28 U.S.C. § 1651(a), provides district courts with the inherent
26  power to enter pre-filing orders against vexatious litigants." *Molski v. Evergreen Dynasty*
27  *Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). However, "such pre-filing orders should rarely
28  be filed." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). "If used too freely

or couched in overly broad terms, injunctions against future litigation may block free access to the courts" and eliminate the "final safeguard for vitally important constitutional rights." *Wood v. Santa Barbara Chamber of Commerce*, 705 F.2d 1515, 1525 (9th Cir. 1983). Courts "are particularly reluctant to impede access to the courts for a pro se litigant." *Id.* "In light of the seriousness of restricting litigants' access to the courts, pre-filing orders should be a remedy of last resort." *Ringgold-Lockhart v. Cty. of L.A.*, 761 F.3d 1057, 1062 (9th Cir. 2014). "When district courts seek to impose pre-filing restrictions, they must: (1) give litigants notice and 'an opportunity to oppose the order before it [is] entered'; (2) compile an adequate record for appellate review, including 'a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed'; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as 'to closely fit the specific vice encountered.'" *Id.* at 1062 (quoting *De Long*, 912 F.2d at 1147–48). To apply the third and fourth "substantive factors," courts consider:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.* at 1062 (quoting *Molski*, 500 F.3d at 1058). "To determine whether the litigation is frivolous, district courts must look at both the number and content of the filings as indicia of the frivolousness of the litigant's claims." *Id.* at 1064 (internal quotations and citation omitted). The court must find "that the number of complaints was inordinate," and that the claims are "patently without merit." *Id.* (quotations omitted). "As an alternative to frivolousness, the district court may . . . find[] that the litigant's filings show a pattern of harassment," and "an intent to harass the defendant or the court." *Id.* (quotations omitted).

"Finally, courts should consider whether other, less restrictive options, are adequate to protect the court and parties." *Id.* at 1064-65.

Plaintiff proceeds pro see, which weighs against declaring him a vexatious litigant. The record contains no evidence of Plaintiff filing any other lawsuits against Defendant. Based on the record, the Court does not find "that the number of complaints [is] inordinate." *See Ringgold-Lockhart*, 761 F.3d at 1064; *see also Wood*, 705 F.2d at 1525 (affirming injunction against relitigation of a "simple pro se employment dispute" that evolved into a "morass of litigation, into which [the plaintiff had] pulled over 250 defendants and, at one point, over 30 district courts"); *De Long*, 912 F.2d at 1148 (concluding that district court's finding of frivolousness abused discretion where the plaintiff had filed three related habeas petitions and two post-judgment motions). The evidence in the record does not a support a finding that "the less restrictive option" of "sanctions such as costs or fees" would be inadequate. *See Ringgold-Lockhart*, 761 F.3d at 1065 (concluding the district court abused its discretion by failing to consider whether "imposing sanctions such as costs or fees on the [plaintiffs] would have been an adequate deterrent"). The Court denies Defendant's Motion to Declare Plaintiff a Vexatious Litigant. (ECF No. 124).

## VII. MOTION FOR SANCTIONS

Plaintiff requests that the Court impose sanctions in the "amount of $855,955,330.33" corresponding to "time spent on the case preparation, that is the pro se plaintiff (who is acting as an lead attorney for the Plaintiff) his expenses, the delay on earning making business because of the time, (not taking in account 5+years of wasted income earning time, with $20,000 per hour being my past and currently prevailing consulting service earning rate), making the up[ ]to date amount to be sanctioned to the defendant to be $20,000 per hour x 40 hours x 50 weeks x 5(10/12) years a total payment amount $233,333,333.33," as well as "[i]temized costs for the lawsuits that are billable in the . . . amount equal to $20,000 per hour my billable income earning rate x 40 hours x 50 weeks x 2(9/12) years = $110,000,000.00," and "medical and non-medical damages

expenses incurred $622,621,997.00." (ECF No. 122 at 27–28). Plaintiff contends that the Court has the authority to impose sanctions in this case pursuant to Rule 11 and Rule 37 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.

Plaintiff lists sixty-two events substantially identical to the list from his opposition to the vexatious litigant motion, asserting "[i]f this is not harassment and unnecessary delay or needlessly increasing the cost of litigation than what is it, demands and screams an ineradicable right to the sanction them very heavily." *Id.* at 8–13; *see supra* Section III. Plaintiff asserts he has not obtained employment "in part because Defendants in this suit retaliated against me and blacklisted me." (ECF No. 122 at 18). Plaintiff further asserts,

> [D]efendant having devised up this game plan from the beginning to thwart the discovery of the plaintiff by blocking/prohibiting them or exhausting the plaintiffs time and win the case on a summary judgment . . . with a bad faith affidavit or declaration. . . .
> [D]efendant is using drag, delay and defend tactics to make the international worker(plaintiff) tired, starve the international worker plaintiff to dead (because he is unable to work and earn money legally), removing all his resources(rental house, car, savings, whatever is left etc) . . . for the past 5 years since I have been terminated and trying this tactics officially since the past 3+ years of litigation, by . . . multiplying the proceedings exasperatingly, tactically trying to make the plaintiff leave the country, caused mishap and mistakes in the plaintiffs legal proceedings and or drop the lawsuit, by directly or by circumventing causing financial hardship to the plaintiff, demands and screams an ineradicable right to sanction the defendant extremely heavily.

*Id.* at 19; *see also* ECF No. 129 at 4–5, 7.

Defendant asserts that Plaintiff's Motion is based on "outlandish allegations which lack any foundation in reality." (ECF No. 123 at 1). Defendant contends that Rule 37 sanctions are improper because there is no order to permit discovery. Defendant further contends that Rule 11 sanctions are improper because Plaintiff has not identified misconduct by Defendant. Defendant further contends that Rule 11 sanctions are improper because Plaintiff failed to serve the Motion on Defendant twenty-one days before filing it with the Court. Defendant further contends that sanctions under 28 U.S.C. § 1927 are

improper because Plaintiff has provided no evidence that Defendant has multiplied the proceedings unreasonably and vexatiously.

"[T]he district court has a broad array of sanctions options at its disposal: Rule 11, 28 U.S.C. § 1927, and the court's inherent authority." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002) (first citing *B.K.B. v. Maui Police Dep't.*, 276 F.3d 1091, 1107 (9th Cir. 2002) (holding that misconduct committed "in an unreasonable and vexatious manner" that "multiplies the proceedings" violates § 1927), then citing *Fink v. Gomez*, 239 F.3d 989, 991–992 (9th Cir. 2001) (holding that sanctions may be imposed under the court's inherent authority for "bad faith" actions by counsel, "which includes a broad range of willful improper conduct")). Rule 11 provides:

> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction upon any attorney, law firm, or party that violated the rule or is responsible for the violation.

Fed. R. Civ. P. 11(c)(1). "[T]he central purpose of Rule 11 is to deter baseless filings in district court . . . . Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), *superseded by statute on other grounds*, Fed. R. Civ. P. 11. "Conduct in depositions, discovery meetings of counsel, oral representations at hearings, and behavior in prior proceedings do not fall within the ambit of Rule 11." *Christian*, 286 F.3d at 1131. Rule 11 places "stringent notice and filing requirements on parties seeking sanctions." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005). Rule 11 contains a "safe harbor" provision, which requires a party seeking sanctions "to give the opposing party 21 days" to withdraw or otherwise correct the offending paper before filing the motion for sanctions. *Id.* at 678; Fed. R. Civ. P. 11(c)(1)(A). Rule 37(b) "empowers the court to take remedial action if a party 'fails to obey an order to provide or permit discovery.'" *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d

1218, 1222 (9th Cir. 2018) (quoting Fed. R. Civ. P. 37(b)(2)(A)). "[W]e read broadly the term order . . . . Rule 37's requirement for an order should . . . include any order relating to discovery." *Id.* (quotations omitted).

In this case, discovery closed on April 30, 2018 pursuant to the Court's January 31, 2018 Order (ECF No. 24). The record contains no evidence that Defendant failed to produce any discovery to which Plaintiff was entitled, or violated an order within the meaning of Rule 37. The record shows that Plaintiff did not satisfy the procedural requirements of the Rule 11 safe harbor. The record does not support a finding that any of Defendant's filings are baseless within the meaning of Rule 11. The record does not support a finding that Defendant engaged in "unreasonable and vexatious" conduct that "multiplies the proceedings" within the meaning of § 1927. The record does not support a finding that Defendant acted in "bad faith" or engaged in "willful improper conduct" justifying sanctions under the Court's inherent authority. The Court denies Plaintiff's Motion for Sanctions. (ECF No. 122).

**VIII. CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendant Covidien LP (ECF No. 45) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Leave to Amend the Complaint filed by Plaintiff Ashwin Khobragade (ECF No. 108) is DENIED.

IT IS FURTHER ORDERED that the Motion for Sanctions filed by Plaintiff Ashwin Khobragade (ECF No. 122) is DENIED.

IT IS FURTHER ORDERED that the Motion to Declare Plaintiff a Vexatious Litigant filed by Defendant Covidien LP (ECF No. 124) is DENIED.

DATED: 2/15/19

**WILLIAM Q. HAYES**
United States District Judge

16cv468